# Illinois Official Reports

## Supreme Court

> ### *Grand Chapter, Order of the Eastern Star of the State of Illinois v. Topinka*,
> ### 2015 IL 117083

| | |
|---|---|
| Caption in Supreme Court: | GRAND CHAPTER, ORDER OF THE EASTERN STAR OF THE STATE OF ILLINOIS, Appellee, v. JUDY BAAR TOPINKA *et al.*, Appellants. |
| Docket No. | 117083 |
| Filed | January 23, 2015 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | State taxation of a nonprofit nursing home by imposition of a "bed fee" was upheld against a challenge brought under the uniformity clause of the Illinois Constitution, but the legislature was encouraged to reconsider the question in light of the benefits provided to the State. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, the Hon. James. R. Coryell, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Evan Siegel, Assistant Attorney General, of Chicago, of counsel), for appellants.

Darrell A. Woolums and Bridget C. Hogan, of Samuels, Miller, Schroeder, Jackson & Sly, LLP, of Decatur, for appellee.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    The issue is whether, as applied in this case, section 5E-10 of the Illinois Public Aid Code (Code) (305 ILCS 5/5E-10 (West 2012)), which taxes the licensed beds of all Illinois nursing home providers, violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2). We hold that it does not.

¶ 2                                        BACKGROUND

¶ 3    Plaintiff, Grand Chapter, Order of the Eastern Star of the State of Illinois, is an Illinois fraternal organization and not-for-profit corporation that is recognized as tax-exempt under section 501(c)(10) of the federal Internal Revenue Code (26 U.S.C. § 501(c)(10) (1988)). Plaintiff owns, operates, and maintains the Eastern Star Home, a nursing home in Macon, Illinois (Eastern Star). Eastern Star is licensed by the Illinois Department of Public Health, which also has granted Eastern Star a permit to enter into life care contracts under the Life Care Facilities Act (210 ILCS 40/1 *et seq.* (West 2012)).

¶ 4    In May 2002, the Department of Public Aid (Department) sent a letter to Grand Chapter directing it to pay the "Nursing Home License Fee" established in section 5E-10 of the Code (the bed fee). Section 5E-10 provides, in relevant part:

"[e]very nursing home provider shall pay to [the Department] on or before September 10, December 10, March 10, and June 10, a fee in the amount of $1.50 for each licensed nursing bed day for the calendar quarter in which the payment is due." 305 ILCS 5/5E-10 (West 2012).[1]

In October 2002, the Department sent Grand Chapter another letter stating that Grand Chapter was delinquent in its payment of the bed fee going back to 1993 and that it owed the Department $244,233 in back fees and an additional $237,890 in penalties. Grand Chapter responded by paying its liability under protest and by filing a declaratory judgment action

---

[1]Although the statute refers to the charge as a "fee," it is in fact a tax, as it is being charged not in exchange for the rendering of a particular service but rather for the raising of general revenues. See *Crocker v. Finley*, 99 Ill. 2d 444, 452 (1984).

seeking to have the bed fee declared unconstitutional under the uniformity clause of the Illinois Constitution.

¶ 5        According to Grand Chapter's amended complaint, admission to Eastern Star is limited to members of Grand Chapter, who either pay Eastern Star a monthly fee or else surrender to Eastern Star all of their present and future assets in exchange for lifetime care. Eastern Star does not apply for or accept any government funding or subsidies, including Medicaid reimbursement, and its residents are required to relinquish the receipt of any government aid, including Medicaid, prior to entering Eastern Star. Given this, Grand Chapter alleged that collection of the bed fee was unconstitutional as applied to it because the principle purpose of the bed fee is to fund Medicaid-related expenditures that are neither precipitated by nor paid to Eastern Star.

¶ 6        The Department filed a response, and both parties moved for summary judgment. In its motion, the State argued that the purpose of the bed fee is not simply to fund Medicaid-related expenditures. Rather, by statute, the Department is required to deposit all collected bed fees into the Long-Term Care Provider Fund (see 305 ILCS 5/5B-8 (West 2012)), which is used for a variety of purposes, only one of which is the reimbursement of Medicaid-related expenditures and many of which either benefit or are precipitated by the operation of nursing homes generally, including Eastern Star. In light of this, the State argued, it is perfectly reasonable to include Eastern Star in the class of "every nursing home" for purposes of enforcement and collection of the bed fee. In contrast, Grand Chapter's motion argued that the bed fee exists solely to fund the reimbursement of nursing homes that charge the state of Illinois through the Medicaid system. Because of this, Grand Chapter argued, it is both unreasonable and absurd to collect that fee from Eastern Star, which does not, never has, and never will participate in the Medicaid system or any other government-funded program. According to Grand Chapter's motion, "[t]here is no conceivable benefit to Eastern Star from the bed fee program and there is no conceivable way that Eastern Star contributes to the problem" that the bed fee was enacted to remedy.

¶ 7        After a hearing, the circuit court of Macon County entered an order granting Grand Chapter's motion for summary judgment and declaring the bed fee unconstitutional under the uniformity clause. In its order, the circuit court specifically found that receipts from the bed fee are paid into the Long-Term Care Provider Fund and that such funds cannot be used either for "general administrative purposes" or for paying any expenses that the state might incur in regulating Eastern Star. Rather, according to the circuit court, the sole purpose of the bed fee is "to provide for reimbursement of Medicaid," a purpose that bears no reasonable relationship to Grand Chapter, which is "a charitable institution that operates on a considerable deficit every year" and "receives no Medicaid funds so there is nothing to reimburse."

¶ 8        Because the circuit court's judgment invalidated a statute of this state, the Department appealed directly to this court under Supreme Court Rule 302(a)(1) (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011)).

¶ 9                                                    DISCUSSION

¶ 10        The issue before this court is whether the circuit court erred in declaring the bed fee, as applied to Eastern Star, unconstitutional under the uniformity clause. The constitutionality of a

statute is a question of law, and our review therefore is *de novo*. *People v. Molnar*, 222 Ill. 2d 495, 508 (2006).

¶ 11    The uniformity clause of the Illinois Constitution provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. "To survive scrutiny under the uniformity clause, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy." *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153 (2003). Here, the first of these standards is not at issue, as Grand Chapter is not arguing that there is no real and substantial difference between those who are taxed and those who are not—*i.e.*, those who are subject to the bed fee and those who are not. Rather, Grand Chapter is arguing that there is a real and substantial difference *within* the class of those who are taxed, namely between nursing homes that participate in the Medicaid program and nursing homes that do not. Thus, our inquiry in this case is limited to whether the taxing classification at issue, which in this case is "every nursing home," bears some reasonable relationship to the object of the legislation or to public policy. This is a narrow inquiry, and we will uphold a taxing classification as long as "a set of facts 'can be reasonably conceived that would sustain it.' " *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 73 (2008) (quoting *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248 (1992)).

¶ 12    In declaring the bed fee unconstitutional under the uniformity clause, the circuit court followed the precise formula set forth above. The circuit court correctly noted that its first task was to identify the purpose of the bed fee, which it determined was "reimbursement of Medicaid." From there, the circuit court asked whether the inclusion of Eastern Star within the class of taxpayers subject to the bed fee bore any reasonable relationship to that purpose. The circuit court concluded that it did not, explaining that Eastern Star is "a charitable institution that operates on a considerable deficit every year" and "receives no Medicaid funds so there is nothing to reimburse." In other words, the circuit court concluded that, because the sole purpose of the bed fee is the reimbursement of Medicaid, it is unreasonable to impose that tax on an institution like Eastern Star, which in no way participates in the Medicaid program.

¶ 13    For its part, Grand Chapter effectively adopts and endorses the circuit court's reasoning in its brief before this court. According to Grand Chapter, the purpose of the bed fee is "to fund Medicaid, including reimbursement to nursing home providers who operate within the Medicaid program." Grand Chapter then argues that, given this purpose, it is both "absurd and unreasonable" to collect the bed fee from Eastern Star, "a nursing home provider that does not benefit from or participate in the Medicaid program, and who will not benefit from or participate in the Medicaid program in the future."

¶ 14    Though structurally sound, the argument advanced by both the circuit court and Grand Chapter suffers from two important and fatal errors. First, the purpose of the bed fee is not simply "to fund Medicaid, including reimbursement to nursing home providers who operate within the Medicaid program." On the contrary, though Medicaid reimbursement is certainly *one* of the purposes of the bed fee, it is clear that the bed fee serves many additional purposes that are wholly unrelated to the Medicaid program. Indeed, section 5E-10 of the Code, which establishes the bed fee, expressly states that "[a]ll fees received by [the Department] under this

- 4 -

Section shall be deposited into the Long-Term Care Provider Fund." 305 ILCS 5/5E-10 (West 2012). The Long-Term Care Provider Fund is established in section 5B-8 of the Code, which enumerates no less than seven distinct purposes for which disbursements from the Fund may be made. In addition to Medicaid reimbursement, these purposes include paying the administrative expenses of the Department and its agents, the enforcement of Illinois's nursing home standards, support of a nursing home ombudsman program, the expansion of home- and community-based services, and the funding of Illinois's General Obligation Bond Retirement and Interest Fund. 305 ILCS 5/5B-8 (West 2012). Each of these purposes may be funded by the bed fee, and not one of these purposes is tied in any way directly to the Medicaid program. Clearly, then, the objects and purposes of the bed fee are far broader than what the circuit court and Grand Chapter would claim.

¶ 15    The second error we find in the argument advanced by both the circuit court and Grand Chapter is the assumption that a taxpayer cannot be made to pay a tax for which he receives no direct, reciprocal, and proportionate benefit. Both the circuit court and Grand Chapter clearly assume that a taxpayer cannot be made to pay a tax that exists either to fix a problem that the taxpayer did not cause or to fund a benefit that the taxpayer does not receive. Indeed, in its order striking down the bed fee as applied to Eastern Star, the circuit court lamented that "[Eastern Star] receives no Medicaid funds so there is nothing to reimburse." And in its brief before this court, Grand Chapter repeatedly insists, in a variety of forms, that it is "patently unfair to impose the bed tax on a nursing home provider who does not, and will not in the future, participate in the Medicaid program nor receive Medicaid reimbursement." The problem with both the circuit court's and Grand Chapter's argument is that this court has *never* required perfect reciprocity between the payment of a tax and the receipt of a benefit from that tax. On the contrary, " '[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.' " *Arangold Corp.*, 204 Ill. 2d at 151 (quoting *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 521-22 (1937)). And because of this, this court has "repeatedly held that a tax may be imposed upon a class even though the class enjoys no benefit from the tax." *Empress Casino*, 231 Ill. 2d at 71-72. Again, the operative inquiry in uniformity cases is not whether there is perfect reciprocity between payment of the tax and distribution of the tax, but rather only whether the taxing classification bears "some reasonable relationship" to the object or purpose of the tax. (Internal quotation marks omitted.) *Id*. at 72. This has always been this court's uniformity standard, and it is a far less stringent standard than that advanced by both the circuit court and Grand Chapter.

¶ 16    Now we note that, in support of the more stringent standard described above, both the circuit court and Grand Chapter rely heavily and almost exclusively upon this court's decision in *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70 (2001). Such reliance is misplaced, however, as *Primeco* involved a factual anomaly that distinguishes it from this and virtually every other of this court's uniformity decisions. In *Primeco*, this court faced a statutory scheme that not only established a very specific tax but also described with both precision and resolve the single and very narrow purpose that tax was designed to serve. At issue in *Primeco* was the "municipal infrastructure maintenance fee" (municipal IMF), which was charged to all Illinois telecommunications providers, both landline-based and wireless alike. *Id*. at 73. Based on clear and pervasive statutory language, this court concluded that the municipal IMF was effectively "a charge for obtaining access to

public rights-of-way." *Id*. at 92. In fact, this court went so far as to characterize the municipal IMF as an outright "*quid pro quo*," exacting "payment of the fee in exchange for access to the public rights-of-way." *Id*. at 94. In light of this decidedly reciprocal arrangement, this court ultimately concluded that it was unreasonable to charge the municipal IMF to providers of wireless telecommunications, as such providers "do not own, operate, or maintain any portion of their infrastructure within the public rights-of-way and do not need or desire to have access to the public rights-of-way for the purpose of installing any such infrastructure." *Id*. at 97.

¶ 17   Thus, contrary to both the circuit court's and Grand Chapter's understanding, *Primeco* does not stand for the broad proposition that the State may impose a tax or fee only on those who either directly benefit from or directly necessitate that tax or fee. Indeed, in case after case, we have said precisely the opposite. See, *e.g.*, *Arangold*, 204 Ill. 2d at 151; *Empress Casino*, 231 Ill. 2d at 71-72. Rather, *Primeco* stands for the very narrow proposition that, when a "tax" or "fee" is operating effectively and exclusively as a rent payment, it may be charged only to those actually enjoying the leasehold. This is a singular holding that has no relevance to the case at hand, as the bed fee is not charged in exchange for the use of anything but rather, like a conventional tax, contributes to the funding of a broad spectrum of state obligations.

¶ 18   So with these two analytical errors identified and corrected, we may now proceed to ask the pertinent uniformity question: whether the taxing classification at issue, which in this case is "every nursing home," bears some reasonable relationship to the object of the legislation or to public policy. We hold that it does. Again, contrary to both the circuit court's and Grand Chapter's understanding, the object of the bed fee is not simply Medicaid reimbursement. Rather, all collected bed fees are deposited into the Long-Term Care Provider Fund, which may be used to fund not only Medicaid reimbursement but also the administrative expenses of the Department and its agents, the enforcement of Illinois's nursing home standards, the nursing home ombudsman program, the expansion of home- and community-based services, and the General Obligation Bond Retirement and Interest Fund. The question, then, becomes whether there is a reasonable relationship between (1) collecting the bed fee from "every nursing home," including Eastern Star, and (2) the state's need to fund these various obligations. Clearly, there is. To begin with, "every nursing home," including Eastern Star, is licensed and operates under various permits issued by the Illinois Department of Public Health, which receives nearly $2 million annually from the Long-Term Care Provider Fund. Secondly, "every nursing home," including Eastern Star, benefits from operating within a regulated industry that is subject to uniform standards of quality and care, the enforcement and oversight of which is paid for in part by the Long-Term Care Provider Fund. And lastly, everyone who lives or does business in the state of Illinois, including "every nursing home," benefits from and has an interest in ensuring that Illinois's bond obligations remain adequately funded. As necessary, the bed fees deposited into the Long-Term Care Provider Fund are available for precisely this purpose. Arguably, any one of these three rationales would be enough to uphold the collection of the bed fee in this case. Taken together, they leave no doubt that the collection of the bed fee from Grand Chapter is perfectly constitutional.

¶ 19   All of that said, we observe in closing that the mere fact that a tax is permissible does not necessarily mean it is wise. Over the course of briefing and arguing its case before this court, Grand Chapter paints a compelling picture of both the noble charitable work it performs and the substantial financial burden it experiences as a result of the bed fee. At numerous points, Grand Chapter emphasizes that the work it performs helps to relieve the burden on the Illinois

Medicaid system by providing private nursing home care to indigent citizens at substantially below market rates and often at a substantial financial loss. And the State itself conceded below that it is "second to none in [its] admiration of the charitable works" that Grand Chapter performs. In light of this, we invite the legislature to reexamine the bed fee statute and, in doing so, to assess fully whether the inclusion of enterprises such as Grand Chapter and Eastern Star within the applicable taxing classification is truly necessary and essential as a matter of public policy. As this court has noted, " '[e]xemption to charitable, educational and religious organizations is bottomed upon the fact that they render service to the State, for which reason they are relieved of certain burdens of taxation.' " *In re Estate of Schureman*, 8 Ill. 2d 125, 132 (1956) (quoting *Morgan v. Atchison, T. & S.F. Ry. Co.*, 225 P. 1029, 1031 (1924)). It would certainly appear that, in its operation of Eastern Star, Grand Chapter is rendering a service that benefits not only its indigent residents but also the taxpayers of Illinois. Whether this is indeed the case, and if so whether Grand Chapter and others like it deserve to be "relieved of certain burdens of taxation" as a result, are questions we encourage the legislature to consider closely.

¶ 20                                               CONCLUSION

¶ 21          For the foregoing reasons, the judgment of the circuit court of Macon County is reversed.

¶ 22          Reversed.