# Illinois Official Reports

## Supreme Court

*Marks v. Vanderventer*, 2015 IL 116226

| | |
|---|---|
| Caption in Supreme Court: | JASON S. MARKS *et al.*, Appellees, v. MARY ELLEN VANDERVENTER *et al.*, Appellants. |
| Docket Nos. | 116226, 116825 cons. |
| Filed | May 21, 2015 |
| Rehearing denied | September 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, the Hon. Christopher C. Starck and the Hon. David M. Hall, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Michael Nerheim, State's Attorney, of Waukegan (Carolyn E. Shapiro, Solicitor General, and Brett E. Legner, Deputy Solicitor General, of Chicago, and Daniel L. Jasica and Victoria Gray, Assistant State's Attorneys, of counsel), for appellants. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Daniel Gallagher, Paul A. Castiglione, Jeffrey S. McCutchan and Margaret S. Zilligen, Assistant State's Attorneys, of counsel), for intervenor-appellant Karen A. Yarbrough and as *amicus*. |
| | Robert Markoff, of Chicago, and Michael K. Noonan, of Noonan Perillo Ltd., and David A. Novoselsky, of Waukegan, for appellees. |

Meredith D. Schacht and Mindy B. Kurlansky, of Neal, Gerber & Eisenberg LLP, of Chicago, for *amicus curiae* Illinois Housing Development Authority *et al*.

Justices          JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      At issue is the constitutionality of a $10 Rental Housing Support Program surcharge collected by the recorder of deeds for the recordation of any real estate-related document in a county. 55 ILCS 5/3-5018 (West Supp. 2013). When originally enacted, the surcharge imposed by section 3-5018 of the Counties Code was $10 and provided that $1 of each surcharge shall be retained by the county in which it was collected. 55 ILCS 5/3-5018 (West 2006). Plaintiffs filed a class action lawsuit in the circuit court of Lake County challenging the surcharge as unconstitutional. In the course of this litigation, the General Assembly amended section 3-5018, imposing a $9 surcharge to fund the Rental Housing Support Program and imposing a separate $1 recordation fee to be paid to the county in which it was collected. Pub. Act 98-5, § 5 (eff. Mar. 22, 2013) (amending 55 ILCS 5/3-5018). The trial court below held both the original and amended versions of the statute to be unconstitutional. Defendants appealed directly to this court pursuant to Supreme Court Rule 302(a)(1) (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011)). We now reverse the trial court's orders and remand for further proceedings consistent with this opinion.

¶ 2                              BACKGROUND

¶ 3      Plaintiffs, Jason Marks and Lauren Marks, filed their complaint against Mary Ellen Vanderventer, recorder of deeds of Lake County, and Lake County itself, alleging that the preamended version of the $10 Rental Housing Support Program state surcharge was unconstitutional. They asserted that the statute created an unconstitutional fee office in violation of article VII, section 9(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 9(a)). Plaintiffs also alleged that the statute violated the equal protection and due process clauses (Ill. Const. 1970, art. I, § 2), as well as the uniformity clause in the state constitution (Ill. Const. 1970, art. IX, § 2). Plaintiffs requested relief in the form of a refund of the surcharges paid by them, exemplary damages, attorney fees, and costs. The trial court below certified a class of plaintiffs and a class of defendants consisting of the recorders of deeds in each of the counties in the state. The State of Illinois was allowed to intervene in the matter.

¶ 4      As enacted in 2005, section 3-5018 required the recorder to collect a $10 surcharge, or fee, from an individual for the recordation of any real estate-related document. The statute provided that $9 of the surcharge was to be submitted to the State for purposes of the Rental Housing Support Program. The remaining $1 was to be retained by the county in which it was

collected and deposited into the county's general revenue fund. 55 ILCS 5/3-5018 (West 2010). Of that $1, 50 cents was allocated "for the costs of administering the Rental Housing Support Program State surcharge and any other lawful expenditures for the operation of the office of the recorder and may not be appropriated or expended for any other purpose." *Id.*

¶ 5    Plaintiffs filed a motion for partial summary judgment. The trial court granted the motion and held that the statute, as written, created an impermissible fee office in violation of article VII, section 9(a), of the Illinois Constitution, and, thus, was unconstitutional on its face.

¶ 6    Section 3-5018 was amended by the legislature, effective March 22, 2013. 55 ILCS 5/3-5018 (West Supp. 2013). As amended, section 3-5018 imposes a $9 Rental Housing Support Program surcharge, to be collected by the recorder and submitted to the State. A separate provision requires the recorder to charge a $1 fee for the recordation of any real estate-related document, 50 cents of which shall be deposited in the county's general revenue fund, and 50 cents of which shall be deposited in the recorder's automation fund. *Id.* Plaintiffs filed an amended complaint challenging the $9 surcharge as unconstitutional on due process, equal protection, and uniformity grounds.[1] The trial court granted partial summary judgment to plaintiffs and held the amended statute unconstitutional based on violations of the due process and uniformity clauses in the Illinois Constitution.

¶ 7    Defendants appealed both rulings directly to this court, and the appeals were consolidated. Karen Yarbrough, Cook County recorder of deeds, was given leave to intervene in this appeal.

¶ 8                                     ANALYSIS
¶ 9                                   I. Fee Office
¶ 10    Plaintiffs claimed in the circuit court that the $1 portion of the $10 surcharge to be retained by the county pursuant to the preamended version of section 3-5018 violated the constitutional proscription against fee offices. They alleged in their complaint that, "[b]y permitting a portion of these fees to be taken and kept by each Recorder of Deeds as part of the collection process, this taking or 'skimming off' as it has been termed by the Illinois Supreme Court violates the prohibition against creation of a fee office prohibited by Article VII Section 9(a)." The circuit court struck down the preamended statute as unconstitutional solely on the basis that the $1 fee retained by the counties created an unconstitutional fee office.

¶ 11    Article VII, section 9(a), of the Illinois Constitution of 1970 provides:

"(a) Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit. Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes." Ill. Const. 1970, art. VII, § 9(a).

¶ 12    Section 9(a) of article VII thus prohibits a "fee office," whereby the compensation of officers and employees, and office expenses, are paid from the fees collected. For example, in *DeBruyn v. Elrod*, 84 Ill. 2d 128, 133-36 (1981), this court held that the constitutional prohibition on fee offices prohibited the sheriff's office from retaining fees pursuant to section 1 of "An Act to provide for the fees of the sheriff ***" (Ill. Rev. Stat. 1977, ch. 53,

---

[1]The amended complaint added Adam Moore and Lisa Moore as plaintiffs, individually and on behalf of a class of similarly situated individuals.

¶ 71). The statute provided, among other things, for a commission to the sheriff of 3% on all sales of real and personal estate made through the execution or judgment of a court. *Id.* The sheriff was statutorily authorized to collect the fees for services he provided in connection with sales under a decree of foreclosure, sales in connection with the execution of judgments, and redemptions. We held that the statute clearly violated article VII, section 9(a), because the sheriff was allowed to retain a portion of the fees as compensation for services provided. *Id.* at 136.

¶ 13    The fee office provision in article VII, section 9(a), also is intended to prevent a local governmental unit from retaining, or "skimming off," a portion of taxes collected for another taxing body as a fee for the service of collecting those taxes. *City of Joliet v. Bosworth*, 64 Ill. 2d 516, 521-24 (1976). See also *Schlessinger v. Olsen*, 102 Ill. 2d 497, 502-03 (1984) (a statute imposing a tax is in violation of the fee office provision where "the taxes were properly imposed but a government entity other than the taxing body collected the tax and retained a percentage for itself"); *Saltiel v. Olsen*, 77 Ill. 2d 23, 27 (1979) ("the collection by one governmental entity of a tax due to a different entity has been regarded as a fee imposed by the former, rather than as a distribution of tax revenues after they have been collected"); *Goldstein v. Rosewell*, 65 Ill. 2d 325, 327-29 (1976). In these so-called "skimming" or "diversion" cases, this court has held that the remedy for the constitutional violation is that the unlawfully diverted revenues must be returned to the governmental entity which imposed the tax. *Schlessinger*, 102 Ill. 2d at 502.

¶ 14    In *Goldstein*, for instance, the statute provided that the treasurer of each county shall retain and pay into the county treasury 4% of all taxes paid pursuant to the inheritance and transfer tax act (a state tax), "in full for all services and expenses rendered, incurred or paid by the county or any of its officers, agents, or employees, in collecting and paying the same." (Internal quotation marks omitted.) *Goldstein*, 65 Ill. 2d at 328. In other words, the statute allowed the county treasurers to "skim off" 4% of the taxes due to the State as fees for their collection of the taxes. This court rejected the defendants' argument that the purpose of the statute was to provide for a legislative method of distributing state revenues to the counties. Rather, the statutory scheme constituted a diversion of state funds, and was "clearly a fee based upon funds collected." *Id.* at 329. This court emphasized the intent of the drafters of the 1970 Illinois Constitution to " 'preclude counties from seeking, in any form, reimbursement from the various taxing bodies for county services rendered in the collection of taxes.' " *Id.* at 330 (quoting *City of Joliet v. Bosworth*, 64 Ill. 2d 516, 524 (1976)). The constitutional debates showed "a concern of the delegates over the faulty fiscal picture presented by financing county expenses through the use of a 'skim off' of revenues from other taxing bodies." *Id.*

¶ 15    In contrast to the above examples, section 3-5018 does not run afoul of the prohibition against fee offices in article VII, section 9(a). The statute directs that $1 of the $10 Rental Housing Support Program state surcharge be deposited in the county's general revenue fund. This is consistent with the second sentence of section 9(a), which provides that fees collected by county officers "shall be deposited upon receipt with the treasurer of the [local governmental] unit." Ill. Const. 1970, art. VII, § 9(a). Section 3-5018 further directs the county to apply 50 cents from each dollar for administering the surcharge and for "any other lawful expenditures for the operation of the office of the recorder." 55 ILCS 5/3-5018 (West 2010). The statute not only directs the recorder to deposit the dollar with the county treasurer but sets forth directions on how the county may spend the dollar. Unlike the sheriff in *DeBruyn*, the

recorder of deeds neither retains the dollar nor has discretion to determine how it is spent. Thus, the recorder acts merely as a conduit to the county treasurer, which is not a violation of the fee office prohibition. See *Gadeikis v. Yourell*, 169 Ill. App. 3d 1033, 1035-36 (1988) (statute providing that a fee collected by the recorder was to be deposited by the county treasurer into a special fund for a computerized document storage system complied with the constitutional intent that accounting, appropriation, and disbursement of funds for the recorder's office was kept separate from the collection of fees).

¶ 16    Moreover, section 3-5018 does not violate the prohibition in article VII, section 9(a), against the "skimming" of funds belonging to another governmental entity. We first note that plaintiffs concede in their brief that the preamended statute did not skim or divert any state funds. Plaintiffs state that "the $1 surcharge retained by the local entities was not intended to be kept, paid to the State, or otherwise 'skimmed,' " and that "the disputed $1 fee paid to the local entities under the original statute was not and was never intended to be paid to the State of Illinois to support this Program." To the extent that the circuit court found the statute unconstitutional based on a skimming or diversion of state funds, however, we reject this proposition. This court noted in *Goldstein* that article VII, section 9(a) does not bar "the common and accepted practice of sharing of State revenues with local governmental units." *Goldstein*, 65 Ill. 2d at 329.

¶ 17    The statutory provision in the case at bar is distinguishable from the provision in *Goldstein*. In that case, we held that the statute unlawfully allocated to the "counties and not the State *** the fees earned by the county treasurer in the collection of the taxes under the Act." *Id.* at 328. The statute thus authorized the treasurer to skim 4% of the state taxes imposed by the General Assembly elsewhere in the statute. In contrast, section 3-5018 did not authorize county recorders to retain a percentage of the funds they collected under other statutory provisions. Rather, the General Assembly clearly provided for a legislative allocation of $9 to be submitted to the State and a separate allocation of $1 to be retained by the county. This does not constitute a fee for the collection of taxes imposed by another governmental body. Accordingly, section 3-5018 does not violate article VII, section 9(a) of the Illinois Constitution.

¶ 18                              II. Uniformity Clause

¶ 19    The circuit court below held that the $9 surcharge for the State's Rental Housing Support Program imposed by the amended version of section 3-5018 violates the uniformity clause of the Illinois Constitution. The uniformity clause provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. To survive a uniformity clause challenge, a "nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy." *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153 (2003). "This is a narrow inquiry, and we will uphold a taxing classification as long as 'a set of facts "can be reasonably conceived that would sustain it." ' " *Grand Chapter, Order of the Eastern Star of the State of Illinois v. Topinka*, 2015 IL 117083, ¶ 11 (citing *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 73 (2008), quoting *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248 (1992)).

¶ 20      In 2005, the General Assembly enacted the Rental Housing Support Program Act. 310 ILCS 105/1 *et seq.* (West 2012). The Rental Housing Support Program state surcharge in section 3-5018 was intended to fund the program. The goals of the legislation challenged by plaintiffs can be found in the General Assembly's legislative findings, enacted at the same time as the amended version of section 3-5018:

> "The General Assembly finds that in many parts of this State, large numbers of citizens are faced with the inability to secure affordable rental housing. Due to either insufficient wages or a shortage of affordable rental housing stock, or both, many families have difficulty securing decent housing, are subjected to overcrowding, pay too large a portion of their total monthly income for housing and consequently suffer the lack of other basic needs, live in substandard or unhealthy housing, or experience chronic housing instability. Instability and inadequacy in housing limits the employability and productivity of many citizens, adversely affects family health and stress levels, and impedes children's ability to learn; such instability produces corresponding drains on public resources and contributes to an overall decline in real estate values. Unaffordable rental rates lead to frequent tenant turnover and difficulty filling vacancies, resulting in unstable income streams for rental property owners, the limited ability of owners to properly maintain their properties, substandard rental housing, and greater rates of foreclosure. High tenant turnover, poorly maintained properties, vacant and abandoned properties, and overcrowded housing negatively impact the safety and health of communities and the real estate values within such communities. Among others, the program created by this Act benefits (i) all individuals who record real estate related documents by helping to stabilize real estate values in the State, (ii) rental property owners by subsidizing the portion of rent that many of their tenants are unable to pay, (iii) those individuals who own real estate in the State by providing an option for affordable rental housing should they one day face foreclosure, and (iv) tenants who participate in the program by providing them with rental assistance and the ability to achieve financial stability so that they are able to become property owners themselves. It is the purpose of this Act to create a State program to help localities address the need for decent, affordable, permanent rental housing." 310 ILCS 105/5 (West 2012) (amended by Pub. Act 98-5, § 10 (eff. Mar. 22, 2012)).

¶ 21      Based on these legislative findings, we find that there is a reasonable relationship between the individuals subjected to the Rental Housing Support Program surcharge and the object of the legislation. The surcharge applies to parties who record real estate-related documents. It is reasonable to conclude that parties who have a legal interest in real estate will benefit from the stable and improved property values created by the program, in ways that the general public may not. In addition, owners of rental property may stand to benefit from a reduction in vacancies and a more certain revenue stream.

¶ 22      The circuit court below found, however, that the claimed benefit of the general improvement of real estate values bears no relation to the limited class of persons who are forced to bear the burden of the fee. The court held that funding the program "more properly belongs on the backs of the entire population and not this class who does not cause or contribute to the 'evil' which the State intends to remedy." The circuit court misconstrues the standard by which courts evaluate uniformity challenges. As this court recently held:

"this court has *never* required perfect reciprocity between the payment of a tax and the receipt of a benefit from that tax. On the contrary, ' "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." ' [Citation.] And because of this, this court has 'repeatedly held that a tax may be imposed upon a class even though the class enjoys no benefit from the tax.' [Citation.] Again, the operative inquiry in uniformity cases is not whether there is perfect reciprocity between payment of the tax and distribution of the tax, but rather only whether the taxing classification bears 'some reasonable relationship' to the object or purpose of the tax. (Internal quotation marks omitted.) [Citation.]" (Emphasis in original.) *Grand Chapter, Order of the Eastern Star of the State of Illinois v. Topinka*, 2015 IL 117083, ¶ 15.

Thus, even if the burden caused by imposition of the surcharge falls on a group who neither benefits from the surcharge nor caused the problems to be remedied by the surcharge, the surcharge may be constitutionally valid so long as there is a rational relationship between the object of the legislation and the classification at issue.

¶ 23   The circuit court also found that section 3-5018 violates the uniformity clause because there was no evidence that ownership of real property contributed to the high cost of rental housing or that providing rental assistance would specifically benefit those who acquire title to real property. However, the General Assembly has no evidentiary burden and is not required to produce facts in support of its justification for the statute. *Wirtz v. Quinn*, 2011 IL 111903, ¶ 83. Instead, once the governmental entity has offered a reason for its classification, the plaintiff has the burden to show that the defendant's explanation is insufficient as a matter of law or unsupported by the facts. *Id.* Plaintiffs have failed to do so. Accordingly, we reverse the circuit court's order finding that section 3-5018 is unconstitutional under the uniformity clause in article IX, section 2.

¶ 24                               III. Due Process Clause

¶ 25   The circuit court below held the statute unconstitutional for the additional reason that it violated the due process clause in our state constitution. Ill. Const. 1970, art. I, § 2. When analyzing a substantive due process claim, this court should first determine "the nature of the right alleged to be infringed by the government's action." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008) (citing *In re R.C.*, 195 Ill. 2d 291, 302 (2001)). The classification of the right affected determines the level of scrutiny to be applied to the statute. *Id.* (citing *In re D.W.*, 214 Ill. 2d 289, 310 (2005)). Generally, courts will apply the rational basis test. *Id.* (citing *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996)). Under this test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Id.* (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 122 (2004), and *Tully*, 171 Ill. 2d at 304). If, however, the statute makes a classification based on race or national origin or involves a fundamental right, it will be subject to strict scrutiny. *Id.* (citing *Stokovich*, 211 Ill. 2d at 122, and *McLean v. Department of Revenue*, 184 Ill. 2d 341, 354 (1998)). In that case, the statute must be narrowly tailored to serve a compelling state interest. *Id.* (citing *R.C.*, 195 Ill. 2d at 303).

¶ 26 Plaintiffs initially contend that the statutory surcharge implicates a fundamental right because property interests are involved and, therefore, strict scrutiny is required. However, the plaintiffs cite no authority for this proposition and the case law is to the contrary. See, *e.g.*, *Estate of Cowser v. Commissioner*, 736 F.2d 1168, 1173 n.3 (7th Cir. 1984) ("Many laws have indirect but nonetheless potentially significant effects on property. Such indirect effects do not subject them to strict scrutiny."). We will therefore apply rational basis review.

¶ 27 Plaintiffs maintain that the surcharge is "unsupported and unsupportable and irrational." We disagree. By helping provide affordable housing to low-income Illinois families throughout the State, the statute provides needed housing security to Illinois residents. In addition, by providing financial stability to vulnerable residents, lowering tenant turnover by subsidizing rents, and providing a more stable income stream to landlords, the statute decreases the number of vacant and abandoned buildings and increases the opportunities for building owners to maintain their property. This improves property values. The statute thus bears a rational relationship to the legitimate goals of providing affordable rental housing and the maintenance and improvement of property values. Accordingly, we conclude that the surcharge is reasonably related to legitimate government interests and, therefore, survives rational basis review.

¶ 28                           IV. Equal Protection

¶ 29 Although the circuit court did not reach the issue, the plaintiffs also challenged the constitutionality of the statute based on a violation of the equal protection clause. Ill. Const. 1970, art. I, § 2. We see no need to reach this issue. The uniformity clause imposes more stringent limitations than the equal protection clause on the legislature's authority to classify the subjects and objects of taxation. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 249-50 (1996). Thus, if a tax is constitutional under the uniformity clause, it is constitutional under the equal protection clause. *Id.* Because we have upheld the constitutionality of section 3-5018 under the uniformity clause, it is not necessary to address whether the statute passes muster under the equal protection clause.

¶ 30                              CONCLUSION

¶ 31 For the foregoing reasons, the judgments of the circuit court are reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 32 Reversed and remanded.