# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jacobsen v. King*, 2012 IL App (2d) 110721

---

| | |
|---|---|
| Appellate Court Caption | JILLIAN JACOBSEN, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. GARY KING, Clerk of the County of Du Page, DAN RUTHERFORD, Treasurer of the State of Illinois, and LISA MADIGAN, Attorney General of the State of Illinois, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-11-0721 |
| Filed | June 11, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed a complaint alleging that the $5 fee added by the legislature to the cost of a marriage license to fund the Married Families Domestic Violence Fund was an unconstitutional tax on marriage, since there is a reasonable relationship between the class taxed, namely, marriage license applicants, and the object of the tax, namely, helping victims of domestic violence leave violent marriages, and, further, plaintiff's tax uniformity challenge was without merit, survival of the uniformity challenge inherently fulfilled the requirements of the equal protection clause, and due process was not violated by the nominal tax. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-1604; the Hon. Terence M. Sheen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Clinton A. Krislov and Kenneth T. Goldstein, both of Krislov & Associates, Ltd., of Chicago, Mark J. Baiocchi, of Law Offices of Mark J. Baiocchi, of Wheaton, Christopher J. Stull, of Law Office of Christopher J. Stull, P.C., of West Chicago, and Bernard Hammer, of Winnetka, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of counsel), for appellees Dan Rutherford and Lisa Madigan.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Jillian Jacobsen, filed a three-count complaint arguing that a $5 fee that the legislature added in 2008 to the cost of a marriage license was an unconstitutional tax on marriage. The circuit court dismissed the plaintiff's complaint, and the plaintiff appeals from that order. We affirm.

¶ 2                                    I. General Background

¶ 3    In June 2008, in Public Act 95-711, the Illinois General Assembly increased by $5 the fee for obtaining a marriage license. Pub. Act 95-711 (eff. June 1, 2008). The $5 charge funds the Married Families Domestic Violence Fund (the Fund). See 55 ILCS 5/4-12003, 4-4001 (West 2010). The General Assembly created the Fund in order to award grants to public and private agencies that facilitate or provide free legal services to currently or formerly married domestic violence victims seeking remedies for domestic violence through civil proceedings (such as dissolution of marriage). It is administered by the Attorney General of Illinois. 30 ILCS 105/6z-72 (West 2010).

¶ 4    In June 2009, the plaintiff paid the Du Page County clerk $35 for a marriage license. In November 2010, the plaintiff filed a suit against the defendants, the Du Page County clerk, the Illinois Treasurer, and the Illinois Attorney General, in their official capacities. The plaintiff also sought statewide certification of a plaintiff class of those who paid the additional $5 and a defendant class of the State's 102 county clerks. The plaintiff's complaint, as amended, alleged that the $5 portion of the marriage license fee that went to the Fund violated the Illinois Constitution's guarantees of due process and equal protection as well as its tax uniformity requirement. Specifically, the complaint alleged that the $5 charge did not survive strict scrutiny for purposes of due process and equal protection for

-2-

several reasons: (1) it must be paid and cannot be waived; (2) the fee is an unreasonable burden on marriage because it directly and significantly impedes one's ability to obtain a marriage license, given that the General Assembly may raise the fee to any amount it wishes; and (3) the charge neither serves a compelling government interest nor is narrowly tailored to achieve the State's purpose in creating the Fund.

¶ 5 The complaint also asserted that the $5 fee violated the rational basis test because (1) it was a tax on the fundamental right to marry, collected to fund a general welfare program; (2) the relationship between the purchase of a marriage license and domestic violence was too remote; and (3) there was no nexus between the $5 fee on marriage licenses and services for married or formerly married victims of domestic violence. The complaint alleged that the fee violated the tax uniformity requirement because it bore no reasonable relation to the statute's object nor was it based upon a real or substantial difference between those taxed (marriage license applicants) and those not taxed (everyone else).

¶ 6 On May 13, 2011, the defendants filed a motion to dismiss the plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). The defendants argued that the fee was constitutional because it was imposed only on those who were getting married and was used to fund programs supporting married or formerly married victims of domestic violence. The defendants further argued that the fee was nominal and that it did not directly or substantially impede the fundamental constitutional right to marry.

¶ 7 On June 28, 2011, following a hearing, the trial court dismissed the plaintiff's complaint. The trial court explained that the $5 fee was constitutional because it was narrowly tailored to further the compelling government interest of helping victims of marital domestic violence end such abuse. Further, the trial court found that the $5 fee did not violate principles of tax uniformity, because there was a clear and reasonable relationship between marriage license applicants and the Fund for domestic violence victims who are or were married, even though not all license applicants would benefit from the Fund. Following the trial court's ruling, the plaintiff filed a timely notice of appeal.

¶ 8 II. Motion to Strike Plaintiff's Introduction Section

¶ 9 At the outset, we note that the defendants request that we strike the introduction section of the plaintiff's opening brief for violating Illinois Supreme Court Rule 341(h)(2) (eff. July 1, 2008). Rule 341(h)(2) sets forth what is to be included in the introductory paragraph of an appellant's brief, describing the nature of the action. The defendants argue that the introductory "nature of the action" section of the plaintiff's brief improperly includes "argumentative matters" in violation of Rule 341(h)(2). We agree with the defendants that portions of the introductory section of the plaintiff's brief contain argument that should not have been included in that section. Nonetheless, we decline to strike the introductory section of the plaintiff's brief but instead will disregard the plaintiff's comments that should not have been included in that section. See *SBC Holdings, Inc. v. Travelers Casualty & Surety Co.*, 374 Ill. App. 3d 1, 15 (2007).

¶ 10                                III. Standard of Review

¶ 11        A motion to dismiss brought under section 2-615 tests the legal sufficiency of the complaint. On review, the inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Because Illinois is a fact-pleading jurisdiction, the plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A claim should not be dismissed pursuant to section 2-615 unless no set of facts can be proved that would entitle the plaintiff to recover. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007). We review *de novo* the circuit court's dismissal of the plaintiff's action. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004).

¶ 12        Here, the plaintiff's complaint is framed solely as a facial challenge to the validity of the additional $5 fee for marriage licenses. A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully, because an enactment is facially invalid only if no set of circumstances exist under which it would be valid. *Napleton*, 229 Ill. 2d at 305. The fact that the enactment could be unconstitutional under some set of circumstances in the future does not establish its current facial invalidity. *Id.* at 306.

¶ 13        Further, statutes are presumed constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to clearly demonstrate a constitutional violation. *O'Brien v. White*, 219 Ill. 2d 86, 98 (2006). Courts have a duty to uphold the constitutionality of a statute when reasonably possible, and, therefore, if a statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. *Napleton*, 229 Ill. 2d at 307.


¶ 14                                IV. The Uniformity Clause

¶ 15        Turning to the merits of the plaintiff's appeal, we first consider the plaintiff's claim that the fee violates the tax uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 2). The uniformity clause states that, "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." *Id.* Under the uniformity clause, tax classifications must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003). The uniformity requirement can be violated where classifications are either underinclusive or overinclusive. *Rose v. Pucinski*, 321 Ill. App. 3d 92, 97 (2001). The challenger to the tax classification is not required to negate every conceivable basis that might support it. *Milwaukee Safeguard Insurance Co. v. Selcke*, 179 Ill. 2d 94, 98 (1997). Where a party makes a "good-faith uniformity challenge, the taxing body bears the initial burden of producing a justification for the classifications. The party challenging the classification then has the burden of persuading

the court that the justification is unsupported by the facts or insufficient as a matter of law." *Id.* at 98-99. Although a section 2-615 motion is often inappropriate for a uniformity challenge, it may be used when the reasonableness of a classification is to be determined as a matter of law. *Rajterowski v. City of Sycamore*, 405 Ill. App. 3d 1086, 1110 (2010).

¶ 16 The plaintiff argues that the tax imposed is underinclusive because it does not provide benefits to victims of domestic violence who are not married. We disagree. Underinclusiveness is determined in relation to the stated legislative objective. *Arangold*, 204 Ill. 2d at 154-55. In addressing whether the tax is underinclusive, we need determine only whether the tax classification bears some reasonable relationship to the object of the legislation. *Id.* at 155. Here, some people who get married will need to utilize free legal services in order to remove themselves from abusive marital relationships. Thus, we find that there is a reasonable relationship between those who are to pay the tax (couples who are marrying) and the object of the legislation (to help victims of domestic violence exit violent marriages).

¶ 17 Relying on *Boynton v. Kusper*, 112 Ill. 2d 356 (1986), the plaintiff insists that our supreme court has already determined that there is no reasonable relationship between marriage licenses and domestic violence. In *Boynton*, the supreme court struck down a similar fee imposed upon those who applied for marriage licenses. The statute required county clerks to pay $10 of the fee collected for issuance of a marriage license into the Domestic Violence Shelter and Service Fund. (The charge was raised to $25 by the time the case reached the supreme court.) The plaintiffs challenged this portion of the license fee as an unconstitutional tax violative of due process and uniformity of taxation. The supreme court held that the charge violated the Illinois due process clause. *Id.* at 369. The supreme court first noted that the charge was a tax, as it bore no relationship to the county clerk's service of issuing and recording licenses. *Id.* at 365. Its sole purpose was to raise revenue for the domestic violence fund. The supreme court then further noted that "[i]n considering the reasonableness of a classification from a due process point of view, under either the police power or the taxing power of the State, 'it must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a rational relation to the evil to be remedied and the purpose to be attained by the statute.' " (Emphasis omitted.) *Id.* at 366-67 (quoting *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 193-94 (1952)). The supreme court then held that the relationship between the purchase of a marriage license and domestic violence was too remote to satisfy the rational basis test. *Id.* at 367-68. The supreme court held that a contrary finding would open the door to the imposition of the costs of other social programs upon marriage license applicants. *Id.*

¶ 18 *Boynton* is distinguishable from the instant case. In *Boynton*, a tax was imposed on marriage license applicants to provide services to all adult citizens who were victims of domestic violence and their dependents regardless of their marital status. *Id.* at 364. Thus, the tax on marriage license applicants was arbitrary because there was only a remote relationship between those who were being taxed and those who were benefitting from that tax. *Id.* at 366-67. Further, the tax funded numerous services that had no relationship to marriage or the dissolution of marriage. *Id.* at 364. Here, in contrast, the tax at issue, while

-5-

imposed only on people who are marrying, benefits only married and formerly married people who need services because of marital domestic violence. As such, the tax herein is for a limited purpose and has a narrower class of beneficiaries than the tax at issue in *Boynton*. Thus, the concerns that the supreme court voiced in *Boynton* regarding the remoteness between those being taxed and those benefitting from the tax are not present here.

¶ 19      We next consider the plaintiff's argument that the fee is overinclusive because it provides benefits to those who were married out of state and those who married prior to the enactment of the fee, and thus never paid the fee. In other words, the plaintiff is complaining that the tax violates the uniformity clause because some people will benefit from the tax even though they did not pay the tax. Although the plaintiff's argument might be true, it does not raise a valid uniformity clause challenge. In considering a uniformity clause challenge, our supreme court has explained:

> "[T]he court is not required to have proof of perfect rationality as to each and every taxpayer. The uniformity clause was not designed as a straitjacket for the General Assembly. Rather, the uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers." *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 252 (1992).

We believe that requiring marriage license applicants to pay a $5 fee to help a victim of domestic violence leave a violent marriage is neither unfair nor unreasonable, even if that victim never paid the $5 fee. We thus find the plaintiff's argument that the fee is overinclusive to be without merit.

¶ 20      The plaintiff also asserts that she stated a tax uniformity claim because "[a] more appropriate program would tax and provide relief to all victims of domestic violence," not merely those who are or were married. First, we believe that the plaintiff's argument misses the legislature's purpose in enacting Public Act 95-711. The purpose of that law was to help victims of violent marriages to exit such marriages. This is not a problem that unmarried people have. We further note that, in certain circumstances, the Illinois legislature already treats married and unmarried people differently. See, *e.g.*, *In re Parentage of John M.*, 212 Ill. 2d 253, 263 (2004) (explaining that the law presumes that a married man is the father of his wife's child born during marriage while no similar presumption exists to establish paternity to a child born to an unmarried woman). We reject the plaintiff's implicit argument that the legislature's choice to make distinctions between married and unmarried people is improper.

¶ 21      Second, to the extent that the plaintiff challenges the wisdom of the Fund, we observe that "[w]hether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, not the courts." *Arangold*, 204 Ill. 2d at 147. Rather, as explained above, this court's role is to determine whether a reasonable relationship exists between the class that is taxed and the justification for the tax. *Id.* at 155. As we find that such a reasonable relationship exists, the plaintiff's tax uniformity challenge is without merit.

¶ 22                    V. Equal Protection and Due Process

¶ 23      The plaintiff also argues that the $5 fee violates her rights to due process and equal

protection because it imposes a direct impediment on her fundamental right to get married. The plaintiff's equal protection claim is without merit. The uniformity clause was intended to encompass the equal protection clause and add to it even more limitations on government. *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 466-68 (1987). Thus, if a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause. *Geja's Café*, 153 Ill. 2d at 247. As we have already determined that the fee at issue does not violate the uniformity clause, the plaintiff's equal protection claim necessarily fails as well. *Id.*

¶ 24    As to the plaintiff's due process claim, in order to properly analyze a claim that a law violates the constitutional guarantee of due process, a court must first determine the nature of the right alleged to be infringed by the government's action. *In re R.C.*, 195 Ill. 2d 291, 302 (2001). Classification of the right affected is critical because the nature of the right dictates the level of scrutiny a court must employ in determining whether the statute in question comports with the constitution. *In re D.W.*, 214 Ill. 2d 289, 310 (2005). Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test. *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996). Under this test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Napleton*, 229 Ill. 2d at 307. In contrast, where the statute at issue affects a fundamental constitutional right, the presumption of constitutionality is weaker, and courts must subject the statute to the more rigorous requirements of strict scrutiny analysis. *Id.* In order to survive strict scrutiny, the measures employed by the government must be necessary to serve a compelling state interest and must be narrowly tailored thereto, *i.e.*, the government must use the least restrictive means consistent with the attainment of its goal. *In re R.C.*, 195 Ill. 2d at 303.

¶ 25    The right to marriage is a fundamental right. *Zablocki v. Redhail*, 434 U.S. 374, 386-87 (1978). Nonetheless, the Supreme Court has specifically held that "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." *Id.* Thus, a court will not use a strict scrutiny test unless the effect of the law impacting the right to marriage is significant. See *id.* (applying strict scrutiny where issue was ban on marriage unless applicant was current on child support payments); *cf. Bowen v. Owens*, 476 U.S. 340, 345-50 (1986) (applying rational basis test to Social Security law that denied survivor benefits upon remarriage to divorced surviving spouses but not widowed surviving spouses); *Califano v. Jobst*, 434 U.S. 47, 54 (1977) (applying rational basis test to Social Security law that discontinued Social Security dependent benefits for children who marry those who are ineligible for Social Security benefits, even though rule might deter some people from marrying).

¶ 26    Here, again relying on *Boynton*, the plaintiff argues that this court should apply the strict scrutiny test because that is the test that *Boynton* used. However, the tax at issue on the marriage license in that case ($25) was much more significant than the tax at issue herein ($5). We agree with the defendants that the $5 fee at issue here is a nominal fee.

¶ 27    The plaintiff points out that in *Boynton* the court specifically noted that there was nothing in the statute at issue that prohibited the legislature from raising the fee. Indeed, while *Boynton* was pending, the legislature did raise the fee from $10 to $25. Although we

acknowledge that the legislature may raise this fee in the future, we decline to speculate regarding how high the legislature could raise the fee before it would constitute a significant impediment to the right to marry. See *Napleton*, 229 Ill. 2d at 305 (although law may be found to be unconstitutional under certain set of circumstances in the future, that will not establish that the law is currently unconstitutional); see also *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 157 (2002) (courts should not issue advisory opinions on what the result might be in a different case). Rather, based on the facts before us, we cannot say that a $5 fee on a marriage license constitutes a significant burden on the right to marry. Thus, we will apply the rational basis test.

¶ 28 Applying that test, we believe that the legislature's imposition of a small charge on marriage license applicants is reasonably related to the Fund's narrow purpose of helping married victims of domestic violence leave violent marriages. As we find that the tax bears a rational relationship to a legitimate legislative purpose, the plaintiff's due process claim fails.

¶ 29                                   VI. Conclusion
¶ 30 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 31 Affirmed.