# Illinois Official Reports

## Appellate Court

*Friedman v. White*, 2015 IL App (2d) 140942

| | |
|---|---|
| Appellate Court Caption | NEIL FRIEDMAN, MARK J. SCHACHT, ALAN CHERNOFF, PETER VASELOPOULOS, and JEFFREY GOLDBERG, Plaintiffs-Appellants, v. JESSE WHITE, Secretary of State, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0942 |
| Filed<br>Rehearing denied | August 13, 2015<br>November 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-L-187; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David A. Novoselsky, of Novoselsky Law Offices, P.C., of Waukegan, for appellants.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Laura A. Ward, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Neil Friedman, Mark J. Schacht, Alan Chernoff, Peter Vaselopoulos, and Jeffrey Goldberg, brought suit against defendant, Jesse White, as Illinois Secretary of State (the State). Plaintiffs argued that two surcharges added to the cost of annual motor-vehicle registration, specifically a $1 surcharge to fund the Illinois State Police Vehicle Fund and a $2 surcharge to fund the Department of Natural Resources (see 625 ILCS 5/3-806 (West 2014)), are unconstitutional. The trial court granted the State's motion to dismiss. We conclude that plaintiffs have forfeited their challenge to the $1 charge and that they did not meet their burden of showing that the $2 charge is unconstitutional. Therefore, we affirm.

¶ 2                                      I. BACKGROUND

¶ 3    Plaintiffs filed suit on March 18, 2014. They filed an amended complaint on March 20, 2014. They alleged that they were Illinois residents who owned and registered vehicles in this state. They brought the suit as the proposed representatives of a class of such people. Plaintiffs challenged the imposition of surcharges under section 3-806 of the Illinois Vehicle Title and Registration Law (625 ILCS 5/3-806 (West 2014)). Amendments to that statute created a $1 surcharge on motor-vehicle registration fees that is deposited into the State Police Vehicle Fund and a $2 surcharge that is "deposited into the Park and Conservation Fund for the Department of Natural Resources to use for conservation efforts." *Id.* Plaintiffs alleged that the legislature promulgated these surcharges "for the avowed purpose" of supplementing the general appropriations necessary to fund the Illinois State Police and the Department of Natural Resources (DNR). Plaintiffs alleged that additional charges imposed as part of the registration process must be used to offset related services, but that the surcharges at issue instead supported unrelated purposes for the general public, thereby constituting an unlawful taking. Plaintiffs alleged that the surcharges therefore violated the Illinois Constitution's due process, equal protection (Ill. Const. 1970, art. I, § 2), and uniformity (Ill. Const. 1970, art. IX, § 2) clauses. They sought a declaration that the surcharges were unconstitutional, a refund of the surcharges to themselves and others similarly situated, and a payment of interest, costs, and attorney fees.

¶ 4    On May 27, 2014, the State filed a motion to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2014)). The State argued that the uniformity clause did not require that the people taxed actually receive a benefit. It argued that, even otherwise, the State Police Vehicle Fund paid for state police vehicles to patrol the public highways, which motor-vehicle owners used, and the Park and Conservation Fund was used for conservation efforts, which, among other things, helped counteract the effects of pollution and highway construction. The State argued that, for the same reasons, the surcharges were constitutional under the due process and equal protection clauses, as there was a rational relationship between the people taxed and the legislation's goal.

¶ 5    On May 29, 2014, plaintiffs filed a motion for partial summary judgment, requesting a declaration that the surcharges were unconstitutional. The following month, plaintiffs filed a response to the State's motion to dismiss, arguing in part that it was an improperly combined motion to dismiss and should be treated as a section 2-615 motion.

¶ 6    A hearing on the motions took place on June 26, 2014. The trial court issued a 21-page memorandum ruling on September 5, 2014, which we summarize. The trial court agreed with

plaintiffs that the State's motion to dismiss was an improperly combined motion, so it was construing it as a motion to dismiss under section 2-615. Plaintiffs' complaint was framed as a facial challenge to the surcharges' validity. The surcharges were properly analyzed as taxes rather than as compensation for services rendered in renewing license plates. To survive scrutiny under the uniformity clause, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy. If a statute passed muster under the uniformity clause, it would satisfy due process and equal protection standards. The people subject to the surcharges were those who owned motor vehicles of the "first division" (generally, cars and small trucks), autocycles, motorcycles, motor-driven cycles, and pedalcycles (collectively, subject vehicles). 625 ILCS 5/3-806 (West 2014). The people not taxed were those who did not own motor vehicles and those who owned second-division vehicles. The statute required the $1 surcharge to be deposited into the State Police Vehicle Fund, which was used to acquire state police vehicles (see 30 ILCS 605/7c (West 2014)). Subject-vehicle owners were more likely than other citizens to require the assistance of the state police, who patrolled highways in vehicles acquired by funds in the State Police Vehicle Fund. Thus, the $1 surcharge on subject-vehicle owners was reasonably related to the object of the legislation. It was neither unfair nor unreasonable that people who did not own subject vehicles also benefitted from the state police's services, as the uniformity clause was designed to enforce only minimum standards of fairness and reasonableness between groups of taxpayers.

¶ 7    The trial court next examined the $2 surcharge, stating as follows, in relevant part. The $2 was deposited into the Park and Conservation Fund for the DNR to use for conservation efforts. The Department of Natural Resources (Conservation) Law (20 ILCS 805/805-420 (West 2014)) explicitly provided for the disposition of the funds collected from the surcharges. Specifically, 50% was to be used by the DNR for normal operations, and the other 50% was to be used for the construction and maintenance of state owned, leased, and managed sites. The legislative debates surrounding the enactment of the $2 surcharge established that the evil to be remedied was the legislature's repeated failure to appropriate sufficient funds to support the DNR. The surcharge was imposed only on Illinois subject-vehicle owners. While some people might walk or bicycle into state-owned park land, it was not unreasonable to conclude that many or most visitors to state parks would use subject vehicles. The court continued:

> "Giving the legislature appropriate deference within the confines of the uniformity requirement, this court is hard-pressed to find the Act's classification of car owners as the taxed class for the benefit of state parks unreasonable. The legislature may have reasonably determined that state parks are most accessible to car travelers. *** [T]here is a reasonable relationship between those who are to pay the tax (car owners) and the objective of the legislation (to benefit state parks, whose visitors likely arrive by car)."

The court therefore ruled that the $2 surcharge on subject-vehicle owners for the benefit of state parks was reasonably related to the object of the legislation.

¶ 8    The trial court granted the State's motion to dismiss and denied plaintiffs' motion for partial summary judgment as moot. Plaintiffs timely appealed.

¶ 10     The trial court granted the State's motion to dismiss under section 2-615 of the Code. A defendant may use a section 2-615 motion to contest the legal sufficiency of a complaint alleging that a statute or ordinance is unconstitutional. *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 8. At the same time, a section 2-615 motion is often inappropriate for a uniformity challenge, but it may be used when a classification's reasonableness is determined as a matter of law. *Jacobsen v. King*, 2012 IL App (2d) 110721, ¶ 15. As there are no disputed facts in this case, a section 2-615 motion was appropriate. We review *de novo* an order granting a section 2-615 motion. *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8. Similarly, we review *de novo* a statute's construction and constitutionality. See *Bartlow v. Costigan*, 2014 IL 115152, ¶ 17.

¶ 11     Plaintiffs challenge surcharges under section 3-806, which imposes registration fees on motor vehicles of the first division, autocycles, motorcycles, motor-driven cycles, and pedalcycles. 625 ILCS 5/3-806 (West 2014). First-division motor vehicles are designed to carry 10 or fewer people.[1] 625 ILCS 5/1-146 (West 2014). The statute imposes a $98 annual fee for first-division motor vehicles. 625 ILCS 5/3-806 (West 2014). It imposes a $68 fee for autocycles[2] and a $38 fee for motorcycles, motor-driven cycles, and pedalcycles. *Id.* The statute goes on to state:

> "A $1 surcharge shall be collected in addition to the above fees for motor vehicles of the first division, autocycles, motorcycles, motor driven cycles, and pedalcycles to be deposited into the State Police Vehicle Fund.
>
> ***
>
> A $2 surcharge shall be collected in addition to the above fees for motor vehicles of the first division, autocycles, motorcycles, motor driven cycles, and pedalcycles to be deposited into the Park and Conservation Fund for the Department of Natural Resources to use for conservation efforts. The monies deposited into the Park and Conservation Fund under this Section shall not be subject to administrative charges or chargebacks unless otherwise authorized by this Act." *Id.*

¶ 12     The parties agree that the surcharges at issue must be analyzed as taxes rather than fees because the charges are for general revenue purposes rather than compensation for services rendered. See *Crocker v. Finley*, 99 Ill. 2d 444, 452 (1984) (fees are regarded as compensation for services rendered whereas taxes are charges assessed to provide general revenue).

¶ 13     The State notes that in plaintiffs' amended complaint they argued that both the $1 and $2 surcharges in section 3-806 were unconstitutional. The State argues that plaintiffs have forfeited their challenge to the $1 surcharge because they do not present any argument on that surcharge in their brief. We agree. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued [in the opening brief] are waived and shall not be raised in the reply brief ***."); see also *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 16 (the failure to clearly define issues and support them with authority results in forfeiture of the argument). Tellingly, plaintiffs do not

---

[1]Second-division vehicles, which include, *inter alia*, those designed for more than 10 people (625 ILCS 5/1-146 (West 2014)), are subject to different fees. See 625 ILCS 5/3-815 (West 2014).

[2]Autocycles were added to the fee schedule effective January 1, 2015. This change does not affect plaintiffs' constitutional arguments.

even respond to the State's forfeiture argument in their reply brief. Therefore, we will confine our analysis to the $2 surcharge.

¶ 14 The $2 surcharge is "deposited into the Park and Conservation Fund for the Department of Natural Resources to use for conservation efforts." 625 ILCS 5/3-806 (West 2014). As the trial court pointed out, section 805-420 of the Department of Natural Resources (Conservation) Law states that the DNR "has the power to expend monies appropriated to the Department from the Park and Conservation Fund in the State treasury for conservation and park purposes." 20 ILCS 805/805-420 (West 2014). Section 805-420 directly addresses the disposition of the $2 surcharge:

> "Revenue derived from fees paid for the registration of motor vehicles of the first division and deposited in the Park and Conservation Fund, as provided for in Section 3-806 of the Illinois Vehicle Code, shall be expended by the Department for the following purposes:
>
>> (A) Fifty percent of funds derived from the vehicle registration fee shall be used by the Department for normal operations.
>
>> (B) Fifty percent of funds derived from the vehicle registration fee shall be used by the Department for construction and maintenance of State owned, leased, and managed sites.
>
> The monies deposited into the Park and Conservation Fund *** under this Section shall not be subject to administrative charges or chargebacks unless otherwise authorized by this Act." *Id.*

¶ 15 Section 2 of article IX of the Illinois Constitution, known as the uniformity clause, states: "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. For a nonproperty tax to survive a uniformity-clause challenge, the tax must: (1) be based on a real and substantial difference between the people taxed and those not taxed; and (2) bear a reasonable relationship to the object of the legislation or to public policy. *Marks v. Vanderventer*, 2015 IL 116226, ¶ 19. Statutes are presumed to be constitutional, and broad latitude is given to legislative classifications for taxing purposes. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250 (1996).

¶ 16 The first part of the inquiry, whether there is a real and substantial difference between the people taxed and those not taxed (see *Marks*, 2015 IL 116226, ¶ 19), is relatively easily resolved. The State maintains that plaintiffs do not contest this requirement and have therefore forfeited the issue, but we believe that plaintiffs have not conceded this criterion, though their analysis for the two criteria overlaps. The real and substantial difference must be in the kind, situation, or circumstance of the persons or objects on which the classification rests. *Jacobsen*, 2012 IL App (2d) 110721, ¶ 17. Here, there is a real and substantial difference between the people taxed, who own first-division motor vehicles, autocycles, motorcycles, motor-driven cycles, and pedalcycles, and those not taxed, who do not own vehicles or who own second-division motor vehicles. *Cf. Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 78 (2008) (there was a real and substantial difference between downstate casinos' average intake of $2 to $6 million per month and upstate casinos' average intake of $20 to $40 million per month); *American Beverage Ass'n v. City of Chicago*, 404 Ill. App. 3d 682, 691 (2010) (there was a real and substantial difference between the item taxed, which was noncarbonated

- 5 -

bottled water, and items not taxed, which were beverages marketed for specific features such as flavoring, vitamins, caffeine, or nutritional additives).

¶ 17   The main issue is the second part of the inquiry, which is whether the tax classification bears some relationship to the object of the legislation or to public policy. See *Marks*, 2015 IL 116226, ¶ 19. "[E]ven if the burden caused by imposition of the surcharge falls on a group who neither benefits from the surcharge nor caused the problems to be remedied by the surcharge, the surcharge may be constitutionally valid so long as there is a rational relationship between the object of the legislation and the classification at issue." *Id.* ¶ 22.

¶ 18   Plaintiffs note that they attached to their motion for partial summary judgment a notice sent out by White along with renewal notices. The notice references the $2 surcharge on renewal fees and states: "As Secretary of State, I do not have the authority to raise or lower fees. I am required to collect all fees established by the General Assembly." Plaintiffs also attached newspaper articles. Plaintiffs argue that these documents show that White "advised the citizens of Illinois that he disagreed with using license fees as a substitute for general revenue." We note that, even putting aside plaintiffs' overly broad characterization of the notice's language, the trial court denied the motion for partial summary judgment as moot based on its grant of the motion to dismiss. As we ultimately affirm the grant of the motion to dismiss, we likewise do not reach the merits of the motion for partial summary judgment. Thus, we will not consider the documents, though we do acknowledge that the legislative debates indicate that White opposed the surcharge. See *infra* ¶ 23.

¶ 19   Plaintiffs argue that surcharges or fees that survived constitutional challenges in the past were designed to support specific programs. Plaintiffs cite *Grand Chapter, Order of the Eastern Star of the State of Illinois v. Topinka*, 2015 IL 117083, ¶ 14, where a nursing-home bed fee was deposited into a Long-Term Care Provider Fund and used for several health-related purposes, including, among others, Medicaid reimbursement, administrative expenses of the Department of Public Aid, and the enforcement of nursing-home standards. Plaintiffs argue that here, in contrast, the surcharge was created for the explicit purpose of replacing general revenue, which is otherwise the general public's obligation and which should be funded through annual appropriations of general revenue funds. Plaintiffs maintain that the general assembly admittedly created the surcharge to fill a revenue shortfall at the expense of plaintiffs and others similarly situated, rather than placing this burden on all Illinois citizens. Plaintiffs additionally cite *Boynton v. Kusper*, 112 Ill. 2d 356, 362, 369 (1986), for the principle that the nominal amount of the tax, and the supposed virtues or benefits derived from the money, are not relevant to the question of whether the tax is constitutional.

¶ 20   After briefing was completed, we granted plaintiffs leave to cite additional authority, *In re Pension Reform Litigation*, 2015 IL 118585. At oral argument, plaintiffs specifically referenced our supreme court's statement that the "United States Constitution 'bar[s] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole [citations].' " *Id.* ¶ 69 (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 883 (1996)).

¶ 21   *In re Pension Reform Litigation* is distinguishable from the instant case in that it dealt with the pension protection clause (Ill. Const. 1970, art. XIII, § 5) and also discussed the contracts clause (Ill. Const. 1970, art. I, § 16); it did not involve a uniformity-clause challenge. Moreover, the quoted section refers to the United States Constitution, and plaintiffs are not presenting a federal constitutional challenge here. That being said, we recognize that the

quote's general sentiment fits within plaintiffs' position that DNR funding is a burden that should be shared by all Illinois residents rather than being partially supported through a tax on a particular group of people.

¶ 22 Plaintiffs argue that in the trial court, the State posited a series of possible justifications as evidence of the legislature's supposed intent in adopting the surcharge. Plaintiffs argue that the trial court upheld the statute because it accepted such arguments and posited that, since most state-park visitors arrive by subject vehicle, there was a reasonable basis to tax them rather than people who visited by other means of transportation. Plaintiffs maintain that such reasoning was contrary to the actual statements of legislative intent, as demonstrated by the legislative debates surrounding the surcharge. Plaintiffs cite *Morel v. Coronet Insurance Co.*, 117 Ill. 2d 18, 24 (1987), for the proposition that the court may look to the General Assembly's floor debates to ascertain the intent behind specific legislation. Plaintiffs quote one of the sponsors of the legislation, Senator Hutchinson, who stated:

> "This bill is something that we need to do to right the wrongs of the last ten to fifteen years, where we've gone from a hundred million dollars at DNR down to forty four million dollars at DNR. We can't even protect our parks at night because of the staffing levels. Good luck going to some of our places that used to be jewels in this State and finding a toilet that flushes. That's how bad it is right now. Now, the second part of this that we've heard, especially about, you know, fees that are associated with this–and I know it's an election year; I know that there are people who are ideologically opposed to anything that raises money; I get it–this has a two-dollar license fee. One dollar, when it's fully actualized, will raise eleven million dollars and it's bondable up to ninety million dollars. And it's supposed to go directly to the–the park roads construction fund. The other dollar raises enough money to keep all of our parks open." 97th Ill. Gen. Assem., Senate Proceedings, May 31, 2012, at 256-57 (statements of Senator Hutchinson).

Later in the debates, Senator Hutchinson stated: "I wish there was someplace we could find money from [general revenue funds] to go into supporting our State parks, but there isn't." *Id.* at 265.

¶ 23 Several senators spoke out against the surcharge. Senator J. Jones stated, "[L]icense plate fees ought to be going to fix the roads and bridges throughout this State that are our highways, not our access roads to our parks," and, "It's time to stop this nonsense of raising fees on everything that comes along." 97th Ill. Gen. Assem., Senate Proceedings, May 31, 2012, at 258-59 (statements of Senator J. Jones). Senator Righter asked if White was opposed to the bill, and Senator Hutchinson responded in the affirmative, stating, "I believe it probably has something to do with the license plate fees." 97th Ill. Gen. Assem., Senate Proceedings, May 31, 2012, at 260 (statements of Senator Hutchinson). Senator Righter then stated:

> "The atrocity of the–of [the] DNR budget going from a hundred million dollars down to forty-some million dollars, as was mentioned earlier by the sponsor, that's been a policy choice. *** Folks, at some point, the citizens of this State are going to say, 'Enough, I pay taxes and I paid taxes for years for the State parks, and now suddenly, because you couldn't control spending in your Medicaid program or you kept dodging pension payments and so the payment grew, you couldn't cut spending, so now I've got to pay to get into state parks.' *** Put the money back in there and take care of the

parks. That's the answer here, not yet another fee increase." 97th Ill. Gen. Assem., Senate Proceedings, May 31, 2012, at 261-62 (statements of Senator Righter).

See also 97th Ill. Gen. Assem., Senate Proceedings, May 31, 2012, at 263 (statements of Senator McCarter) ("[T]he parks did not deteriorate on their own. We *** failed to implement a discipline of spending in this State government, and apparently the only *** solution you have is more taxes and fees.").

¶ 24    Plaintiffs argue that the legislative debates show that the surcharge was intended solely to make up for years of failing to adequately fund the DNR through general funds. Plaintiffs argue that the trial court instead relied on a "possible reasonable basis" for imposing the surcharge. Plaintiffs argue that such reasoning allows all legislation to be judged on the arguments of counsel and the suppositions of trial courts, rather than demonstrated legislative intent, and makes it impossible for any legislation to be found unconstitutional under the uniformity clause.

¶ 25    The State argues that it needed to articulate its justification only after a uniformity challenge and that plaintiffs have forfeited their argument by not citing any authority holding that the justification for a tax classification must have been explicitly considered by the legislature during legislative debates. The State argues that plaintiffs have likewise forfeited their contention that the State's justification cannot be presented by its counsel.

¶ 26    Plaintiffs have cited authority regarding the role of debates in determining legislative intent, so they have not forfeited that issue. Regarding the second argument, the State urges us to find plaintiff's argument forfeited for failing to cite authority to rebut the State's argument. However, forfeiture applies when a party does not cite authority for its own position (see *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352, ¶ 20 ("[A] party forfeits review of an issue on appeal by failing to support *its* argument with citation to authorities." (Emphasis added.))), which is not the case here. In other words, the failure to challenge the State's counterargument with authority that might not even exist does not result in forfeiture of the question on appeal. Therefore, we will address the full merits of this issue.

¶ 27    The State maintains that, in any case, it is well settled that a client's attorney may make admissions that are binding on his client, so counsel's statements articulating the State's justification were sufficient. The State argues that plaintiffs failed to meet their burden of establishing that the State's justification is not supported by facts or is insufficient as a matter of law. The State argues that, in the trial court, it articulated a justification establishing that the classification bears a reasonable relationship to the object of the legislation or to public policy. Namely, the State argued that subject vehicles contribute to pollution and create the need to build highways, which in turn destroy natural habitats. The State argued that such damage is ameliorated by conservation efforts. The State maintains that, even though the trial court found that the justification was that state parks are most accessible to subject-vehicle travelers, which was not a basis the State articulated, we may affirm the ruling because our review is *de novo* and the record supports dismissal on the grounds set forth by the State.

¶ 28    In its brief, the State argues that plaintiffs' argument also fails because the legislative debates do not rebut its asserted justification, as the debates did not pertain to the $2 surcharge at issue. However, at oral argument, the State conceded that the debates covered numerous charges, including the $2 surcharge.

¶ 29 The State argues that, even otherwise, the statements of four senators would not express the legislative intent of the entire General Assembly. *Morel*, 117 Ill. 2d at 24 (" 'Legislative intent' speaks to the will of the legislature as a collective body, rather than the will of individual legislators."); see *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 148 (2003) (in addressing due process challenge, supreme court discussed what legislature "may have believed"). The State contends that, even if one of the General Assembly's purposes in enacting the surcharge was to fund the DNR for maintenance and improvement of parks and to make up for a revenue shortfall, that does not render the surcharge constitutionally infirm. The State argues that, although the surcharge is a tax and the classification must be reasonable, there is nothing prohibiting one of the objectives from being the need to raise revenue. See *Arangold Corp.*, 204 Ill. 2d at 155-56 (rejecting argument that uniformity clause prohibits taxing a narrow group to fund a general welfare program).

¶ 30 Plaintiffs respond that the key is the legislature's intent, which is shown here by the debates. They argue that, while an attorney's statement may bind a client, no case has ever held that this applies where the client did not authorize the statement or where the statement is contrary to the undisputed facts of record, those being the legislative debates and White's opposition to the surcharge. Plaintiffs argue that we should recognize the only statement of legislative intent that is before us, which shows that the surcharge was intended as a substitute for general revenue obligations and therefore violates the uniformity clause.

¶ 31 When a party challenges a classification under the uniformity clause, the taxing body has the initial burden of producing a justification for the classification. *Jacobsen*, 2012 IL App (2d) 110721, ¶ 15. The inquiry is narrow, and we will uphold a taxing classification if a set of facts can be reasonably conceived that would sustain it. *Id.* Plaintiffs appear to take the position that the State must begin with the legislative record in support of the classification. This approach is not supported by case law. Rather, the government does not have an evidentiary burden and does not have to produce facts in support of its justification for the statute. *Marks*, 2015 IL 116226, ¶ 23. "Instead, once the governmental entity has offered a reason for its classification, the plaintiff has the burden to show that the defendant's explanation is insufficient as a matter of law or unsupported by the facts." *Id.*; see also *Arangold Corp.*, 204 Ill. 2d at 156 (the taxing body need only assert a justification for the classification, and it has no evidentiary burden in justifying the tax). Thus, while plaintiffs may rely on the legislative debates to argue that the State's position is insufficient or unsupported, this does not mean that the State is not free to articulate an independent rationale in the first place. Indeed, the appellate court has explicitly stated that the taxing entity may create an "after-the-fact justification" for the classification. *American Beverage Ass'n*, 404 Ill. App. 3d at 691.

¶ 32 As stated, courts will uphold a taxing classification "if a state of facts can reasonably be conceived that would sustain the classification." *Allegro Services, Ltd.*, 172 Ill. 2d at 251. Here, the State's asserted justification is that subject vehicles create pollution and the need for roads, which in turn destroy habitat, and which effects can be partially ameliorated by DNR conservation efforts. We conclude that the State's justification shows some reasonable relationship between the tax classification and the object of the legislation or public policy, as people who do not own subject vehicles do not contribute to pollution and the need for roads to the same degree as subject-vehicle owners. While non-subject-vehicle owners certainly have some level of such contribution and also benefit from DNR resources, the question is only whether the taxing classification has a reasonable relationship to the object or purpose of the

tax. *Marks*, 2015 IL 116226, ¶ 22. Indeed, a tax may be imposed upon a class that is not responsible for the condition to be remedied and does not get a direct benefit from its expenditure. *Id.* Therefore, the fact that owners of second-division vehicles are not subject to the surcharge does not defeat the validity of the tax, especially considering that the majority of such owners presumably are subject to the surcharge through their ownership of subject vehicles. See also *Allegro Services, Ltd.*, 172 Ill. 2d at 253 (the uniformity clause enforces minimum standards of reasonableness and fairness between groups of taxpayers). That subject vehicles are not the only source of pollution in this state also does not make the classification arbitrary or unreasonable. *Cf. Empress Casino Joliet Corp.*, 231 Ill. 2d at 73-75 (expert's report that casinos were not the sole reason for the decline of horse racing did not satisfy the plaintiff's burden of establishing that the legislature's stated reason for singling out casinos for taxation was arbitrary or unreasonable). We recognize that the State did not provide evidence that the DNR's activities actually decrease pollution, but once it offered a reason for its classification, it became plaintiffs' burden to show that the explanation was insufficient as a matter of law or unsupported by the facts. See *Marks*, 2015 IL 116226, ¶ 23.

¶ 33    Plaintiffs' arguments below and on appeal do not factually challenge the State's justification for the classification. Rather, they focus on the role of legislative intent in a uniformity-clause challenge. Courts have looked to legislative findings to determine the goals of the legislation, which courts have then used to determine whether there is a reasonable relationship between the individuals subjected to the surcharge and the object of the legislation. See *id.* ¶ 21; see also *Empress Casino Joliet Corp.*, 231 Ill. 2d at 74 (legislature's justification for surcharge was expressly set forth in the statute). This situation is somewhat different in that only floor debates are involved. However, the lack of a statement of legislative intent within the statute does not jeopardize the classification, as the reasons for the classification need not appear on the statute's face. *Empress Casino Joliet Corp.*, 231 Ill. 2d at 76.

¶ 34    In cases where the justification for the tax is expressly set forth in the statute, the legislators are adopting the justification in passing the law. Here, in contrast, the intent of providing general funding for the DNR through the surcharge was shown by a handful of senators, and the thoughts of the remaining senate and house members who voted for the bill are not revealed in the debates. See also *People v. R.L.*, 158 Ill. 2d 432, 442 (1994) ("[C]ourts generally give statements by individual legislators in a floor debate little weight when searching for the intent of the entire legislative body."). Nevertheless, we recognize that courts can and do look to floor debates in ascertaining legislative intent (*Morel*, 117 Ill. 2d at 24), and it is clear from looking at the debates that revenue for the DNR was at least one of the goals of the surcharge. Still, generating revenue is the purpose of *all* taxes, and the debates reflect a broad policy discussion of whether needed funding for the DNR should be obtained through general revenue funds versus a particular tax. The debates do not answer the questions of why such revenue was sought through a license-plate-registration surcharge as opposed to a different tax or fee and why it applies to subject vehicles and not second-division vehicles. That is, the legislature could have chosen to generate additional revenue through the surcharge precisely because of the detrimental effects of subject vehicles on the environment. There also could have been other goals of the surcharge, especially considering that we have no transcripts of discussion of the bill in the Illinois House. Here, in the context of this litigation, the State has "produced a justification for the classification *** which the General Assembly *could reasonably have*

*concluded* was a rational justification." (Emphasis added.) *Empress Casino Joliet Corp.*, 231 Ill. 2d at 78.[3] In *American Beverage Ass'n*, 404 Ill. App. 3d at 691-92, the appellate court stated that, even if environmental concerns were an after-the-fact justification, they were sufficient to sustain the tax classification. The same logic applies here. See also *Empress Casino Joliet Corp.*, 231 Ill. 2d at 76 (we must uphold a taxing classification if any set of facts can be reasonably conceived that would sustain it). Thus, plaintiffs' reliance on the legislative debates does not meet their burden of proving that the State's asserted justification is not supported by the facts or law. See *Arangold Corp.*, 204 Ill. 2d at 157 (the plaintiff has the ultimate burden to show that the taxing body's asserted justification is unsupported by the facts or insufficient as a matter of law).

¶ 35　　We acknowledge that the trial court did not rely on the State's justification for the surcharge, but our review in this appeal is *de novo*, and we may affirm the trial court's judgment on any basis provided by the record. *Bjorkstam v. MPC Products Corp.*, 2014 IL App (1st) 133710, ¶ 23. Our resolution also does not require us to address whether the trial court could properly create its own rationale for the classification in granting the motion to dismiss.

¶ 36　　Regarding plaintiffs' challenges based on the equal protection and due process clauses, the State argues that plaintiffs have forfeited these issues because they failed to adequately raise them in the trial court and have not addressed them in their briefs. We agree that plaintiffs' briefs focus solely on the uniformity clause, so plaintiffs have forfeited their arguments that the surcharge violates the equal protection and due process clauses. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Even otherwise, where a tax is constitutional under the uniformity clause, as we have determined the $2 surcharge is, it also satisfies the equal protection clause. *Marks*, 2015 IL 116226, ¶ 29. At least one case has stated that a tax that is constitutional under the uniformity clause is also constitutional under the due process clause (*Valstad v. Cipriano*, 357 Ill. App. 3d 905, 919 (2005)), though we do not definitively adopt such a position here. *Cf. Marks*, 2015 IL 116226, ¶ 25 (addressing due process argument after finding that tax did not violate uniformity clause); *Jacobsen*, 2012 IL App (2d) 110721, ¶ 24 (same).

¶ 37　　　　　　　　　　　　　III. CONCLUSION

¶ 38　　For the reasons stated, we conclude that plaintiffs did not satisfy their burden of showing that the $2 surcharge under section 3-806 of the Illinois Vehicle Title and Registration Law violates the uniformity clause, and we affirm the judgment of the Lake County circuit court.

¶ 39　　Affirmed.

---

　　　　[3]In *Empress Casino Joliet Corp.*, 231 Ill. 2d at 77, our supreme court further rejected the plaintiffs' argument that *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70 (2001), held that, where the General Assembly expressly sets forth a tax's purpose, the taxing body could not defend against a uniformity challenge by offering a different rationale.